## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JAMES JERROD SPIKES, JR.,** | * | **CIVIL ACTION** |
| **PETITIONER** | * | |
| | * | **NO. 20-cv-0316** |
| **VERSUS** | * | |
| | * | **SECTION "H" (5)** |
| **HEATH MARTIN, WARDEN** | * | |
| **RESPONDENT** | * | |

## RESPONSE TO PETITION FOR *HABEAS CORPUS* RELIEF

<u>OVERVIEW</u>

James Jerrod Spikes, Jr. is a state prisoner incarcerated at the Tangipahoa Parish Jail in Amite, Louisiana. He is serving a eight year sentence as a result of his conviction for introduction of contraband into a penal facility (La. R.S. 14:402) and his subsequent adjudication as a habitual felony offender (La. R.S. 15:529.1). Spikes has petitioned this Court for a writ of habeas corpus, contending that his incarceration is in violation of his rights under the United States Constitution.

Spikes's claims are procedurally barred and without merit. For that reason, the Court should dismiss the petition with prejudice and otherwise deny relief.

## TABLE OF CONTENTS

OVERVIEW..................................................................................................................1

PRELIMINARY MATTERS.........................................................................................3

TIMELINESS...............................................................................................................9

EXHAUSTION............................................................................................................10

PROCEDURAL DEFAULT.........................................................................................11

    1.     The state court(s) to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred..................................................................................11

    2.     The petitioner has failed to establish any basis for excusing his procedural default...........................................................................................................13

MERITS REVIEW.......................................................................................................15

    1.     Spikes is not entitled to relief based upon his claim that the transcripts do not accurately reflect the events occurring at trial (Claim 5). .............................15

    2.     Spikes is not entitled to relief based upon his claim that he is entitled to retroactive application of the 2017 amendments to Louisiana's habitual offender law (Claim 1). .........................................................................18

    3.     Spikes is not entitled to relief based upon his "tampering with evidence" claim (Claim 2)..........................................................................................19

    4.     Spikes is not entitled to relief based upon his claim that counsel was ineffective for failing to call Demarquez Harris as a witness (Claim 3). .............22

    5.     Spikes is not entitled to relief based upon his claim concerning the identity of a confidential informant (Claim 4). ...................................................................24

CONCLUSION AND PRAYER....................................................................................26

CERTIFICATE OF SERVICE.....................................................................................26

<u>PRELIMINARY MATTERS</u>

**1.      Custody.**

The respondent does not dispute that the petitioner is in custody.

**2.      The state court record.**

Submitted along with this Response is the complete state court record relating to Spikes's trial and collateral proceedings in the Louisiana courts, presented in four volumes.

Volumes 1-2 consist of the entire record of the district court from the matter of *State of Louisiana v. James Spikes, Jr.*, number 15-CR4-128964 on the docket of the 22nd Judicial District Court for the Parish of Washington. It includes all of the proceedings held in the district court before, during, and after the petitioner's trial.

Volume 3 consists of the record of the Louisiana First Circuit Court of Appeal from docket number 2017-KA-0087, in which the petitioner sought direct review of his conviction and sentence.

Volumes 4 consists of the petitioner's two applications for supervisory review to the Louisiana First Circuit Court of Appeal under that court's docket numbers 2018-KW-1494 and 2019-KW-0203, respectively. Each of those writ applications concern the petitioner's application for post-conviction relief.

There are no records from the Louisiana Supreme Court because the petitioner never sought review from the Louisiana Supreme Court.

***A note on citations to the state court record.***  The record has been digitally imaged and sequentially numbered by undersigned counsel.[1] In this pleading, counsel will refer to the State Court Record as "SCR" followed by the volume number and the assigned sequential page number. Accordingly, "SCR1 at 54" would refer to page 54, which is located in the first volume of the state court record.

---

1   The hardware used to do this was a scanner; the software used is Adobe Acrobat Pro 2017.

### 3.     The facts: a brief overview.

The petitioner, while incarcerated in the Washington Parish Jail as a pre-trial detainee, illegally possessed contraband, namely, a cell phone.

### 4.     The petitioner's claims.

The petitioner raises five claims. The first four are listed in the habeas corpus petition (Form AO241) (Rec. Doc. 1), as follows:

**GROUND ONE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The COURT ANSWERED THE Claim in accordance with ACT 2017, No. 282   I FILED UNDER SENATE BILL 221 A POST-CONVICTION Relief for INMATES That Remained NON-CONVICTED FOR FIVE(5) Years AFTER COMPLETION OF PAROLE WENT EFFECTIVE ON NOVEMBER 1, 2017 for PEOPLE ELIGIBLE FROM NOVEMBER 1, 2015 - November 1, 2017

(b) If you did not exhaust your state remedies on Ground One, explain why:

The Senate BILL 221 PREVAILED THE CLERK OF COURT SENT PAPERWORK STATING THE MULTIPLE OFFENDER DOCKET HAD BEEN RESCINDED AND WAS NO LONGER RESPONSIVE TO PETITIONER NAME THE 22nd JUDICIAL DISTRICT HAS NOT FORWARDED THE INFORMATION TO THE DEPARTMENT OF CORRECTION RULING FEBRUARY 19, 2018

... DERELICTION OF DUTY.

* * *

**GROUND TWO:** TAMPERING WITH EVIDENCE

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

WARDEN JIM MILLER Altered THE VIDEO BY RECORDING THE VIDEO WITH HIS PHONE THE VIDEO DOES NOT SHOW THE FINDING OF A PHONE ARE ALL THE OTHER ARTICLES FOUND UNDER A BLANKET ON THE THE VIDEO DOES NOT SHOW petitioner PLACING anything UNDER THE BLANKET JUDGE MARTIN CODY JUDGEMENT IS NOT BASED ON FACTS.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

* * *

GROUND THREE: INEFFECTIVE ASSISTANCE OF COUNSEL

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

ATTORNEY DAVID CRAIG STATED HE WOULD SUBPOENA
DEMARQUEZ HARRIS WHO IS ALSO IN THE VIDEO THAT
WAS DELETED AND WOULD HAVE TESTIFIED THAT THE PHONE
WAS NOT FOUND ON MY SIDE OF THE TABLE I STATED
THIS IN MY POST-CONVICTIO APPLICATION JUDGE COADY
WAS BIAS IN JUDGEMENT DUE TO COMPLAINTS FILED
AGAINST HIM TO THE JUDICIAL COMMISSION AGAINST HIM

DEMARQUEZ HARRIS WAS HOUSED IN THE WASHINGTON
PARISH JAIL ACROSS THE STREET FROM THE
COURT HOUSE ATTORNEY DAVID CRAIG DIDNOT
SUBPOENA HIM AS HE SAID HE WOULD.

AO 241
(Rev. 10/07)                                                                    Page 10

* * *

GROUND FOUR: STATE DID NOT PROVIDE NAME OF CONFIDENTIAL
INFORMANT

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

JUDGE COADY STATES IN HIS REASON FOR DENIAL OF
POST-CONVICTION APPLICATION CLAIM 2 PETITIONER
DIDNOT NAME BUT 1 WITNESS HOW COULD PETITIONER
NAME A WITNESS AND THE STATE DIDNOT PROVIDE
THE NAME OF CONFIDENTIAL INFORMANT TO ENABLE
HIM TO BE CALLED.

Rec. Doc. 1, pp. 6-7, 8, 9-10, 11.

The petitioner raises a fifth claim in a separate "brief in support of writ" (Rec. Doc. 1-1)

alleging that the state court record is inaccurate:

NOW INTO THE COURT COMES JAMES J.
SPIKES JR, IN ORDER TO BRIEF THIS COURT
CONCERNING THE ACTS OF MALFEASANCE INVOLVED
IN THIS CASE DOCUMENT HAVE BEEN
FALSIFIED TO FALSELY DETAIN AND CONVICT
THE PETITIONER PETITIONER HAS FILED IN
THIS HONORABLE COURT CONCERNING THIS
CONSPIRITAL PLOT CONCERNING COURT REPORTER
KAREN CARTIE JENKING ALTERING TRANSCRIPTS

TO FALSELY DETAIN AND PREVENT PETITIONER
FROM MAKING A FAIR SHOWING ON HIS
APPELLATE BRIEF. PETITIONER HAS BEEN
DENIED A FAIR APPEAL ON ALL STATE LEVELS.
PETITIONER FILED UNDER SPIKES VS. KAREN CARTIE
JENKINS CONCERNING THESE ACTS OF MALFEASANCE
DURIN 2015 - 2016, BUT DUE TO ACCESS TO
THE COURT AND FALSIFICATION OF TRIAL
TRANSCRIPT UNDER DOCKET # 15-CR-4-128564
PETITIONER NOW FILES FOR THE PRODUCTION
OF THE TAPES USED TO TRANSCRIBE THESE
TRANSCRIPT FOR THE INTREST OF JUSTICE AND
TO PROTECT THE DIGNITY OF THE LAW.

Rec. Doc. 1-1, pg. 1.

The petitioner's statement that he "filed under Spikes v. Karen Carter Jenkins concerning these acts of malfeasance durin[g] 2015-2016" refers to a § 1983 suit filed December 28, 2016 in this Court under docket number 2:16-cv-17896 (Rec. Doc. 1), which the Court dismissed for failure to prosecute on May 30, 2017 (Rec. Docs. 7-8) (Morgan, J.).

### 5.     Proceedings in the state courts (timeline).

#### A.     Proceedings leading to conviction and sentence.

| September 3, 2015 | The district attorney institutes prosecution by bill of information. | SCR$_1$ at 4. |
|---|---|---|
| June 21, 2016 | Trial; petitioner found guilty as charged. | SCR$_1$ at 92-94; SCR$_1$ at 129-253; SCR$_1$ at 54. |
| January 4, 2017 | Sentencing: the petitioner is adjudicated a third felony offender and sentenced to serve eight years at hard labor. | SCR$_3$ at 619; SCR$_2$ at 317; SCR$_3$ at 659-674. |

#### B.     Direct review proceedings.

| September 15, 2017 | Petitioner's conviction and sentence affirmed: State v. Spikes, 17-0087 (La. App. 1 Cir. 9/15/17), 228 So.3d 201. | SCR$_2$ at 365-373. |
|---|---|---|

The petitioner did not seek ask the Louisiana Supreme Court to review the decision of the Louisiana First Circuit Court of Appeal. ECF Doc. 1, pg. 3, Answer to Question 9(g); Louisiana Supreme Court Clerk's Office, (504) 310-2300.

#### C.     Collateral review proceedings.

| October 2, 2017 | Spikes submits an application for post-conviction relief to the district court. | SCR$_2$ at 374-383. |
|---|---|---|
| January 19, 2018 | The district attorney files an answer to the application for post-conviction relief.[*] | SCR$_4$ at 760-766. |
| (Not dated.) | Spikes submits a response to the district attorney's answer. | SCR$_2$ at 385-395. |
| April 11, 2018 | The state district court denies relief with written reasons. | SCR$_2$ at 402-405. |
| September 18, 2018 | Spikes files a "writ of mandamus" with the Louisiana First Circuit Court of Appeal. | SCR$_4$ at 710-718. |
| December 26, 2018 | The Louisiana First Circuit denies relief because "[o]n April 11, 2018, the district | SCR$_4$ at 709. |

---

[*]   The district attorney's answer lists the wrong docket number, 16-CR6-129868 rather than 15-CR4-128964. This is the fault of the undersigned counsel, who mixed up this petitioner (*James* J. Spikes, Jr.) with another petitioner (*Jason* J. Spikes, Jr.) and therefore incorrectly listed the docket number for Jason J. Spikes, Jr.

| | | |
|---|---|---|
| | court denied relator's application for postconviction relief," and advises the petitioner that "[i]n the event relator elects to seek review of the ruling on his application for postconviction relief with this court, he may do so without the necessity of obtaining a return date, and the application must be filed on or before February 22, 2019." | |
| February 8, 2019 | Spikes files an application for supervisory review with the Louisiana First Circuit Court of Appeal concerning the denial of post-conviction relief. | SCR$_4$ at 734-748. |
| April 29. 2019 | The Louisiana First Circuit denies relief because "The 2017 amendments to the habitual offender statute (La. R.S. 15:529.1) do not apply retroactively" and because "[t]he claims of ineffective assistance of counsel, prosecutorial misconduct, and tampered evidence are not supported by the documents attached to this writ." | SCR$_4$ at 733. |

The petitioner did not seek ask the Louisiana Supreme Court to review the decision denying post-conviction relief. ECF Doc. 1, pg. 6, Answer to Question 11(d).

<u>TIMELINESS</u>

Spikes's conviction became "final" for federal habeas corpus purposes upon the expiration of time for seeking direct review, which occurred on <u>October 16, 2017</u>—thirty days after the decision of the Louisiana First Circuit Court of Appeal affirming his conviction and sentence. <u>See</u> 28 U.S.C. § 2244(d)(1)(A); La. Sup. Ct. Rule X, § 5(a); SCR[2] at 373.

Spikes submitted his post-conviction relief application on <u>October 2, 2017</u> (SCR[2] at 383). His application for post-conviction relief remained "pending" within the meaning of 28 U.S.C. § 2244(d)(2) continuously[2] (i) until the Louisiana First Circuit Court of Appeal ultimately denied relief on April 29, 2019 (SCR[4] at 733), and (ii) for thirty days thereafter, or until <u>May 29, 2019</u>, the period of time that Spikes was authorized to seek further review from the Louisiana Supreme Court (La. Sup. Ct. Rule X, § 5(a)).

Based on the above discussion, Spikes was required to apply for federal habeas corpus relief within one year of May 29, 2019. He did so: his federal habeas corpus petition was submitted to the clerk of court on January 22, 2020 (Rec. Doc. 1, pg. 16). The respondent therefore concludes that Spikes's habeas corpus petition is not time-barred.

---

2   The state district court denied relief on April 11, 2018 (SCR[2] at 383). Spikes did not seek supervisory review within thirty days of that date. See Uniform Rules of the Courts of Appeal, Rule 4.

Spikes did, however, apply for a writ of mandamus on September 18, 2018 (SCR[4] at 710-718), which is far more than thirty days after April 11, 2018. From this, the respondent infers that Spikes had not actually received the state district court's ruling denying post-conviction relief. Why else seek mandamus relief?

The respondent therefore applies equitable tolling from April 11, 2018 (the date of the district court's ruling) until December 26, 2018 (the date that the First Circuit Court of Appeal advised Spikes that his request for mandamus was moot because the state district court had already ruled and directed him to seek supervisory review on or before February 22, 2019) (SCR[4] at 709). Spikes thereafter did timely seek supervisory review: his second writ application is dated February 8, 2019 (SCR[4] at 734-748), which is before February 22, 2019.

EXHAUSTION

The authority of courts to grant of federal habeas relief is limited by the doctrine of exhaustion. See 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State").

The premise of the doctrine of exhaustion is that "comity" requires states to have "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." Rose v. Lundy, 455 U.S. 509, 518 (1982) (citation omitted).

To provide the state courts with this opportunity, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including seeking discretionary review from the state supreme court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In this case, the petitioner has not presented any of his claims to the Louisiana Supreme Court. For that reason, and that reason alone, *none* of the petitioner's claims are exhausted.

This would ordinarily call for the dismissal of a habeas corpus petition *without* prejudice so that the petitioner may properly litigate his claims in the state courts. Rose v. Lundy, *supra*.

But, for the reasons that follow, the petition should be dismissed *with* prejudice as procedurally defaulted because the petitioner is no longer able to litigate his claims in the state courts: if the petitioner returned to the state court system to litigate his claims, they would be dismissed as repetitive (La. C.Cr. P. art. 930.4) and/or time-barred (La. C.Cr. P. art. 930.8(A)).

PROCEDURAL DEFAULT

The authority of courts to grant of federal habeas relief is limited by the doctrine of procedural default. Pertinent here, "if the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, then there is a procedural default for purposes of federal habeas." Sones v. Hargett, 61 F.3d 410, 416 (5th Cir. 1995) (cleaned up, citation omitted).

**1.      The state court(s) to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.**

**A.**

If the petitioner were to ask the Louisiana Supreme Court to review the denial of his application for post-conviction relief (or the decision of the Louisiana First Circuit Court of Appeal declining to reverse the ruling denying post-conviction relief), the Louisiana Supreme Court would find his application procedurally barred as untimely. The rules of that Court provide:

> An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs (but not when the court has merely granted an application for purposes of further consideration), or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal; however, if a timely application for rehearing has been filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing. *No extension of time therefor will be granted*.

La. Sup. Ct. Rule X, § 5(a) (emphasis supplied).

The Louisiana First Circuit Court of Appeal denied the petitioner's writ application on April 29. 2019 (SCR$_4$ at 733). The petitioner did not apply for rehearing, nor could he,[3] and the

---

3   See Morris v. Steuben, 01-0137 (La. 1/26/01), 781 So.2d 1220, 1220-1221.

thirty-day period expired on May 29, 2019.

It is now 2020, so any application the petitioner might file at the Louisiana Supreme Court would be dismissed as time-barred pursuant to that Court's Rule X, § 5.

## B.

If the petitioner were to attempt to re-litigate his claims in the state courts by filing a new application for post-conviction relief, the state courts would find his new application procedurally barred for two reasons.

First, Louisiana law provides that "a successive application [for post-conviction relief] shall be dismissed if it fails to raise a new or different claim." La. C.Cr. P. art. 930.4(D).

Second, Louisiana law provides that—with limited exceptions not applicable here[4]—all applications for post-conviction relief must be filed within two years of the date "the judgment of conviction and sentence has become final under the provisions of Article 914 or 922 [of the Code of Criminal Procedure]." La. C.Cr.P. art. 930.8(A). Article 922 provides that when a petitioner fails to timely apply for a writ of review with the Louisiana Supreme Court, the judgment of an appellate court "becomes final when the delay for applying for a rehearing [i.e., fourteen days] has expired and no application therefor has been made." La. C.Cr.P. art. 922(A), (B), (D).[5]

In this case, Spikes's conviction became "final" as a matter of state law on September 29, 2017 because:

- the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence on September 15, 2017 (SCR$_2$ at 365-373);

---

4   The exceptions are for claims based upon newly discovered evidence, for claims based upon new rules of constitutional criminal procedure, for applications filed on or before October 1, 2001, and for applications filed in death penalty cases. La. C.Cr. P. art. 930.8(A)(1) through (A)(4).

5   This rule applies only if the petitioner does *not* timely seek supervisory review: "If an application for a writ of review is timely filed with the supreme court, the judgment of the appellate court from which the writ of review is sought becomes final when the supreme court denies the writ." La. C.Cr.P. art. 922(D). This is admittedly strange, but it is how Louisiana law works. See, e.g., Ohlsson v. State, 16-1186 (La. 11/17/17), 229 So.3d 921.

- the petitioner had fourteen days to apply for rehearing, but did not do so; and

- the petitioner did not timely seek a writ of review from the Louisiana Supreme Court.

See La. C.Cr.P. art. 914(A), (B), (D); Ohlsson v. State, 16-1186 (La. 11/17/17), 229 So.3d 921.

Two years from the date the petitioner's conviction and sentence became final is September 29, 2019.

It is now 2020, so any application for post-conviction relief filed by the petitioner would necessarily be filed more than two years after the date the judgment of conviction and sentence became final.

## C.

The petitioner failed to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred. His claims are, therefore, procedurally barred.

### 2. The petitioner has failed to establish any basis for excusing his procedural default.

There are two exceptions to the rule of procedural default. The first exception requires a showing of "cause and prejudice"—that "some objective factor external to the defense impeded [the petitioner's] efforts to raise the claim in state court" (cause) *and* that "the error worked to [his] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions" (prejudice). Canales v. Stephens, 765 F.3d 551, 562 (5th Cir. 2014).

The second exception requires a showing that "a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed." To make such a showing, "the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the

new evidence.' " <u>Finley v. Johnson</u>, 243 F.3d 215, 221 (5th Cir. 2001) (citation omitted).

     ***Cause and prejudice.*** Spikes fails to identify anything "external to the defense" which prevented him from asking the Louisiana Supreme Court to review his claims. That is, he fails to show cause. "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." <u>Hogue v. Johnson</u>, 131 F.3d 466, 497 (5th Cir. 1997). For that reason, the "cause and prejudice" exception to the rule of procedural default is not applicable.

     ***Fundamental miscarriage of justice.*** Spikes has offered no "new, reliable evidence that was not presented at trial." For that reason, the "fundamental miscarriage of justice" exception to the rule of procedural default does not apply.

     Spikes's claims are procedurally defaulted, and there is no basis for excusing his procedural default.

<u>MERITS REVIEW</u>

The habeas corpus statute, 28 U.S.C. § 2254(b)(2), provides that "an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." For that reason, although the petitioner has not exhausted the remedies available in the state courts, the respondent addresses the merits of the petitioner's claim. The review is *de novo* because there has been no merits adjudication of the petitioner's claim.

**1.      Spikes is not entitled to relief based upon his claim that the transcripts do not accurately reflect the events occurring at trial (Claim 5).**

The respondent first addresses the petitioner's claim that "case documents" have been falsified by the court reporter because the state courts' resolution of the petitioner's claims rely upon those transcripts.

This claim is cognizable in habeas corpus proceedings. See <u>Chessman v. Teets</u>, 354 U.S. 156 (1957). In that case, the court reporter who made notes during the trial (Perry) died after transcribing approximately one-third of the transcript. <u>Id</u>. at 158. The district court then, on motion of the prosecutor, appointed a second court reporter (Fraser) to transcribe the remainder of the proceedings based upon the deceased court reporter's notes. <u>Id</u>. at 159. The defendant "unsuccessfully sought to have the California Supreme Court halt the preparation of the transcript on the ground that Perry's notes could not be transcribed with reasonable accuracy." From there,

> A "rough" draft of the transcript was submitted to the trial judge in February 1949, but was not made available to petitioner, although he had requested that it be furnished him. After this draft had been gone over by the deputy district attorney, it was filed with the judge in final form on April 11, 1949, and a copy was then sent to the petitioner at San Quentin Prison.

> Thereafter petitioner sent to the trial judge a list of some 200 corrections to the transcript, and at the same time moved that "a hearing be ordered to enable [petitioner] to determine actually the ability of Mr. Fraser to read

> Mr. Perry's notes, and to enable the [petitioner] to offer a showing this is not, and challenge it as, a usable transcript, and to enable [petitioner] to point out to the court the many inaccuracies and omissions in this transcript, to prove these inaccuracies and omissions, and for the court to determine these matters." In these papers petitioner further stated that he had "not yet had the opportunity to confer with his legal advisor during the trial and consequently has been hesitant to offer error in certain instances until he has verified this error with his legal advisor."
>
> Petitioner's motion was denied and the matter continued to proceed on an *ex parte* basis to final conclusion.

Chessman, 354 U.S. at 159-160 (some alterations omitted).

The Supreme Court held that this procedure did not comport with due process. The Court stated, in relevant part: "All we hold is that, consistently with procedural due process, California's affirmance of petitioner's conviction upon a seriously disputed record, whose accuracy petitioner has had no voice in determining, cannot be allowed to stand." Id. at 164. The Court noted that petitioner "is entitled to have his conviction reviewed upon a record which has been settled in accordance with procedural due process." Id. at 164, n. 12.

This case does not remotely resemble the Chessman case. Here, the court reporter who was present during the proceedings transcribed the proceedings and her transcript was accompanied by the following certification:

> I, KAREN CARITE JENKINS, Official Court Reporter in and for the State of Louisiana, employed as an official court reporter by the Twenty-Second Judicial District Court for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that this testimony was reported by me in the stenotype reporting method, was prepared and transcribed by me or under my direction and supervision, and is a true and correct transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with the transcript format guidelines required by statute or by rules of the board or by the Supreme Court of Louisiana, and that I am not related to counsel or to the parties herein nor am I otherwise interested in the outcome of this matter.
>
> KAREN CARITE JENKINS, C.C.R.
> Official Court Reporter
> Certificate #91227

SCR$_1$ at 253.

In <u>Chessman</u>, there was no formal mechanism for challenging the accuracy of the transcript. The petitioner challenged the accuracy of the transcript anyway. <u>See</u> 354 U.S. at 159-160 ("petitioner sent to the trial judge a list of some 200 corrections to the transcript....").

In this case, there was a formal mechanism for challenging the accuracy of the transcript. Louisiana law provides that, after a motion for appeal has been granted, the district court retains jurisdiction to "correct an error or deficiency in the record." La. C.Cr.P. art. 916(2). The petitioner, however, did not challenge the accuracy of the transcription. Not ever—not while the appeal was pending, and in connection with his post-conviction relief proceedings. <u>See</u> SCR$_2$ at 374-383 (application for post-conviction relief, not containing any allegations that the transcript contained inaccuracies).

A habeas petitioner is not denied due process of law when he disagrees with the trial transcript, and there is a mechanism for challenging the accuracy of the trial transcript, and he declines to avail himself of that mechanism.

Finally, a habeas petitioner is not entitled to relief based upon conclusory assertions. <u>Cf.</u> <u>Range v. Berghuis</u>, 2015 WL 1967030, at *14 (E.D. Mich. 4/30/15) (denying habeas relief on similar claim because the petitioner "fails to support his assertions with anything from the record or any source other than himself, such as defense counsel, another party, the court reporter, or an updated transcript" and because "[c]onclusory allegations, without evidentiary support, do not provide a basis for habeas relief").

There is no merit to this claim.

> 2.    **Spikes is not entitled to relief based upon his claim that he is entitled to retroactive application of the 2017 amendments to Louisiana's habitual offender law (Claim 1).**

Spikes' first claim concerns his eligibility for a reduced sentence based upon Act 282 of the Louisiana Legislature's 2017 Regular Session, which amended Louisiana's Habitual Offender Law (La. R.S. 15:529.1). He urges that this Act entitles him to some relief, although he phrases it awkwardly ("The Senate Bill 221 prevailed[,] the clerk of court sent paperwork stating the multiple offender docket had been rescinded and was no longer responsive to petitioner name[,] [but] the 22nd Judicial District has not forwarded the information to the Department of Correction").

Act 282 provides in pertinent part that "This Act shall become effective November 1, 2017, and shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." Based upon this language, both the state district court and the Louisiana First Circuit Court of Appeal held that it does not apply to the petitioner. SCR$_2$ at 402, SCR$_4$ at 733.

This claim is not cognizable in a habeas corpus proceeding because it does not involve a question of federal law, and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

In any event, the state courts' determination that Act 282 does not apply to the petitioner is correct. The petitioner's conviction and sentence became "final" as a matter of state law on September 29, 2017 (see pp. 12-13 & n. 5, above), and for that reason did not become final "on or after November 1, 2017."

**3.      Spikes is not entitled to relief based upon his "tampering with evidence" claim (Claim 2)**

  **A.      Additional pertinent facts.**

The facts pertinent to this claim come from the trial testimony of Jim Miller, the warden of the Washington Parish Jail. See SCR$_1$ at 202-207. He explained that, at the time of the offense, the jail's video system "was kind of outdated, you really couldn't burn a disc straight from the DVR that the cameras went to." SCR$_1$ at 206, lines 22-24.[6] As a result, he aimed his cell phone camera at the television set as the video footage was being played, and then transferred the file recorded by his cell phone to a disc. SCR$_1$ at 205-206. When asked why the video footage "cut off where we see it cut off at," he testified: "That's where I cut it off." SCR$_1$ at 206-207.

Warden Miller further testified:

  Q:  Is there any way -- is this video still in the system somewhere?

  A:  No, sir.

  Q:  When does it turn over?

  A:  Two weeks.

  Q:  But you took a [cell phone] video of what you had at the time?

  A:  Yes, sir.

SCR$_1$ at 207, lines 2-9.

As the petitioner alleges, the footage captured by Warden Miller "does not show the finding of a phone" (Rec. Doc. 1, pg. 8). This point was made to the jury during defense counsel's cross-examination of Warden Miller:

  Q:  This video camera that was on in 2015, in August, the 19th, 2015?

  A:  Yes, sir.

  Q:  Is it running all the time?

  A:  Yes, sir.

  Q:  So, that we are not seeing the act, finding of the cell phone by your

_____

6   The camera system had been replaced by the time of the trial. SCR$_1$ at 206, lines 26-30.

           choice?

A:     Not by my choice, to prove possession of contraband in a Correctional facility, I have to show he is in possession of the cell phone.

Q:     Okay. That film did or does exist though, does it not, of the actual finding of that cell phone by Deputy or Corporal Larocca, correct?

A:     The report states he found it. The video don't.

Q:     This video doesn't, clearly?

A:     Correct.

Q:     What I am saying is, was there a video of him finding it?

A:     No, sir. I cut it off.

Q:     You cut your cell phone off?

A:     Correct.

Q:     Okay, but there was a video of him, this camera is running 24/7, right?

A:     I understand what you're saying. Yes, sir. Yes, sir.

Q:     So, there was a video of --

A:     There would have to be. Yes, sir.

Q:     -- of Corporal Larocca finding the cell phone?

A:     Yes, sir.

Q:     Does it exist today?

A:     No, sir.

Q:     So, it is gone?

A:     Yes, sir.

Q:     And it is gone because you chose not to film it with your cell phone and download it to your computer?

A:     No. Actually, I didn't choose not to, that's just where I stopped it. It wasn't choice, I thought it was over. That's where I stopped it.

Q:     And it didn't seem important to you to film or to copy the part of the film where Corporal Larocca finds the cell phone?

A:     I am not going to say it wasn't important, that's where I stopped it. That's all I can say. That's where I stopped it at.

SCR$_1$ at 208-210.

Corporal Larocca testified that he watched as one inmate (Demarquez Harris) "push[ed] a blanket over" and then another inmate (James Spikes) "put the phone in" that blanket. SCR$_1$ at 213.

His testimony also makes clear that the recovery of the cell phone from the blanket was not captured on the video that was presented to the jury. During direct examination, the prosecutor asked Larocca what he did after the video cut off. The answer was: "I went over there, picked up the blanket and the phone fell on the floor." SCR$_1$ at 216, lines 25-30.

### B.      Law and argument.

The defendant alleges that the video was "altered," but the state court record demonstrates that it was not "altered" in the sense that it was changed to show events that did not occur. The video was simply *incomplete*.

The jury was fully aware of the fact that the video was incomplete. See, e.g., SCR$_2$ at 231, lines 12-19 (defense closing argument) ("I said something to you at the beginning in my opening statement about you being the judges of the evidence and the judges of the lack of evidence. Where is the film of Larocca finding the phone? How hard would it have been to copy that as well and show that to you? Ask yourself that question, please.").

The jury was also given an explanation of why the video was incomplete: Warden Miller testified that he stopped the recording because he thought the footage he captured included all of the pertinent events: "I thought it was over" (SCR$_2$ at 210, lines 3-4).

In retrospect, the portion of the surveillance video captured by Warden Miller did not include all of the pertinent events. It does not follow that a violation of the Constitution has occurred.

The Constitution may be violated by the failure to preserve evidence. Arizona v. Youngblood, 488 U.S. 51 (1988). But this requires a showing of bad faith: "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57-58.

The record here does not show bad faith. It shows, at most, negligence—and that is not

enough to establish a constitutional violation. <u>Cf</u>. <u>Youngblood</u>, 488 U.S. at 58 (standard of bad faith not met where "[t]he failure of the police to refrigerate the clothing and to perform tests on the semen samples can at worst be described as negligent" and "[n]one of this information was concealed from respondent at trial").

There is no merit to Spikes' claim that he is entitled to habeas corpus relief because the evidence against him was "altered."

### 4. Spikes is not entitled to relief based upon his claim that counsel was ineffective for failing to call Demarquez Harris as a witness (Claim 3).

#### A. Additional pertinent facts.

The trial transcript reflects that Demarquez Harris passed a blanket to James Spikes and that James Spikes hid his contraband cell phone under that blanket. $SCR_1$ at 213-214. Additional contraband was found underneath the blanket, and Demarquez Harris was charged with possession of contraband in jail in connection with the other contraband. $SCR_1$ at 220, lines 12-20.

The defendant's theory of the case was that *he* should not have been convicted because the contraband cell phone actually belonged to Demarquez Harris:

> … we are left with this photograph [sic], that yes could have been that my client, Mr. Spikes, had a phone. Okay. That's possible, but it is also possible that Demarquez Harris had the phone, isn't it? Demarquez Harris, who has by the deputy's acknowledgment, been charged with contraband several times in the past. Is it not reasonable to believe that this phone belonged to him? Why wasn't he charged? Why isn't he sitting here today?

$SCR_1$ at 230, lines 1-12.

#### B. Law and argument.

The law in this Circuit is that "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. Thus, to

prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citations omitted).

Here, there is an obvious strategic reason for declining to call Demarquez Harris: counsel asked the jury to believe that Demarquez Harris committed the crime, and not James Spikes. Spikes presents no basis for believing that Harris was willing to admit to the crime, and if he were unwilling to admit to the crime then either (1) he could refuse to testify, asserting the privilege against self-incrimination, or (2) he could deny that the cell phone belonged to him, which would tend to incriminate the petitioner. Counsel could reasonably conclude that attempting to call Demarquez Harris to the stand was a lose-lose proposition.

Moreover, the petitioner offers no factual basis for concluding that Demarquez Harris would have testified or what his testimony would have been. He instead offers only conjecture. That is not enough to establish deficient performance or prejudice. Cf., e.g, U.S. v. Guerra, 628 F.2d 410, 413 (5th Cir.1980) (claim of uncalled witnesses unmeritorious because "no one knows what they would have testified to. All we have is what [the petitioner] says they would have said.").

There is no merit to Spikes' claim that he is entitled to habeas corpus relief because of ineffective assistance of counsel due to the failure to present the testimony of Demarquez Harris.

5.      **Spikes is not entitled to relief based upon his claim concerning the identity of a confidential informant (Claim 4).**

A.      **Additional pertinent facts.**

James Spikes's cell phone was not recovered as the result of a random search. Instead, it was the result of a "shakedown" prompted by a tip from a confidential informant. See SCR₂ at 397 (copy of police report). Spikes did not at any time request the identity of the confidential informant; in the state court proceedings, he alleged only that trial counsel was ineffective for failing to obtain the identity of the confidential informant. SCR₂ at 379; SCR₄ at 740-741.

B.      **Law and argument.**

The United States Fifth Circuit Court of Appeal has summarized the applicable law as follows:

> Roviaro v. United States is the seminal Supreme Court case which analyzes the informant's privilege. 353 U.S. 53 (1957). The Court noted there that the purpose of the informant's privilege was to further and to protect the public's interest in effective law enforcement. Id. at 59. This privilege, which in actuality is the Government's privilege, recognizes that citizens have an obligation to inform law enforcement organizations of their knowledge about criminal activity. The privilege also encourages such communications by preserving the informant's anonymity. Id
>
> Federal courts have long recognized that informants are a "vital part of society's defense arsenal." McCray v. Illinois, 386 U.S. 300, 307 (1967). However, the informant's privilege is not without limitation. It must be balanced with and must not override defendants' rights to due process in criminal cases. Roviaro, 353 U.S. at 60. As such, the privilege is limited by three prudential considerations. First, if revealing the informant's communication will not reveal the informant's identity, that communication is not privileged. Id. Likewise, if the informant's identity has already been revealed to one who has a reason to resent the informant's communication, the identity may be disclosed. United States v. Fischel, 686 F.2d 1082, 1091 (5th Cir.1982).
>
> The final consideration rises to constitutional magnitude: If the privilege interferes with a defendant's due process right to prepare his defense or if disclosure of the informant or his communication is essential to a fair determination of the defendant's guilt or innocence, the privilege must give

way. <u>Roviaro</u>, 353 U.S. at 62. The key to this consideration turns upon whether the disclosure of the informant's identity or his communication is relevant and helpful to the defendant. See <u>id.</u> at 61–62; <u>United States v. Valenzuela–Bernal</u>, 458 U.S. 858, 867 (1982); <u>Fischel</u>, 686 F.2d at 1093.

This Court has developed a three-part test to determine whether disclosure of the informant's identity or communication is required. The Court examines 1) the informant's degree of involvement in the crime, 2) the helpfulness of the disclosure to the defense, and 3) the Government's interest in nondisclosure. <u>United States v. Vizcarra–Porras</u>, 889 F.2d 1435, 1438 (5th Cir.1989), cert. denied, 495 U.S. 940 (1990) (citing <u>United States v. Toro</u>, 840 F.2d 1221, 1232 (5th Cir.1988)).

<u>United States v. Sanchez</u>, 988 F.2d 1384, 1391 (5th Cir. 1993).

The first factor of the <u>Sanchez</u> test does not support disclosure. The informant in this case was a "tipster" in that he merely provided the police with information, and "the amount of participation by a mere tipster does not compel disclosure." <u>Sanchez</u>, 988 F.2d at 1391-1392 (citations omitted).

The second prong also does not support disclosure of the identity of the informant. This case involved events captured on video. As phrased by trial counsel in response to a complaint the petitioner lodged with the Louisiana Bar Association, "a jury found him guilty of possessing a cellphone (i.e., contraband) in the Washington Parish Jail after seeing it for themselves on film (imagine that)." SCR$_4$ at 786. In light of this, a claim that the identity of the confidential informant would have been helpful to the petitioner's defense at trial lacks plausibility.

Finally, the third prong supports nondisclosure. The safety of an inmate informant would obviously be placed at risk by the disclosure of his identity.

There is no merit to Spikes' claim that he is entitled to habeas corpus relief because he did not learn the identity of an informant who made authorities aware of the presence of a contraband cell phone in the jail.

<u>CONCLUSION AND PRAYER</u>

Respondent Warden Heath Martin respectfully submits that the petitioner's claims are unexhausted (pg. 10, above) and procedurally barred (pp. 11-14, above), and in any event lack merit (pp. 15-25, above). Respondent therefore respectfully prays that this Court dismiss the instant petition with prejudice.

Respectfully Submitted,

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney
22nd Judicial District – Parishes of
 St. Tammany and Washington
701 N. Columbia Street
Covington, Louisiana 70433
Tel: (985) 809-8398
Email: mcaplan@22da.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served the foregoing pleading by sending it via USPS first-class mail, addressed as follows:

James Jerrod Spikes, Jr., DOC # 461129
Tangipahoa Parish Jail
P.O. Box 250
Amite, LA 70422
*Petitioner, pro se*

This the <u>30th</u> day of <u>April</u>, 20<u>20</u>, at Covington, Louisiana.

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney