UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JAMES JERROD SPIKES, JR.,** | * | CIVIL ACTION |
| **PETITIONER** | * | |
| | * | NO. 20-cv-0316 |
| **VERSUS** | * | |
| | * | SECTION "H" (5) |
| **HEATH MARTIN, WARDEN** | * | |
| **RESPONDENT** | * | |

**RESPONSE TO MOTION FOR PRODUCTION OF DOCUMENTS (REC. DOC. 8)**

MAY IT PLEASE THE COURT:

This is a habeas corpus proceeding instituted ]by James Jerrod Spikes, Jr., an individual in custody pursuant to the judgment of a state court (28 U.S.C. § 2254). Spikes has filed a *Motion for Production of Documents Video and Audio Tapes* (Rec. Doc. 8). Respondent Warden Heath Martin now responds pursuant to this Court's order (Rec. Doc. 9).

Spikes seeks the production of "the original surveillance video" (Rec. Doc. 8, ¶¶ 1-4) and the audio recording of the trial proceedings maintained by the court reporter (Rec. Doc. 8, ¶ 6).

The respondent submits that this motion is in effect a motion for discovery, and that the petitioner cannot show "good cause" for such discovery within the meaning of the Federal Rules Governing Section 2254 Petitions.

**LAW AND ARGUMENT**

1.       The petitioner's motion is in effect a motion for discovery.

2.       The standard for obtaining discovery in a § 2254 habeas proceeding is "good cause." Rule 6 of the Federal Rules Governing Section 2254 Petitions. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Instead, discovery is permitted only when there is "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." Gramley, 520 U.S. at 908-909.

3.       As explained in the *Response to Petition for Habeas Corpus* at pp. 10-13, the petitioner's claims are unexhausted and procedurally defaulted. Accordingly, the petitioner cannot show "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." For that reason alone, the Court should deny the petitioner's motion.

4.       In addition, an order directing the production of "the original surveillance video" would be pointless because that video no longer exists. This is demonstrated by the trial transcript, particularly the testimony of Jim Miller, the warden of the Washinton Parish Jail.

Warden Miller explained that, at the time of the offense, the jail's video system "was kind of outdated, you really couldn't burn a disc straight from the DVR that the cameras went to." $SCR_1$ at 206, lines 22-24. As a result, he aimed his cell phone camera at the television set as the video footage was being played, and then transferred the file recorded by his cell phone to a disc. $SCR_1$ at 205-206. When asked why the video footage "cut off where we see it cut off at," he testified: "That's where I cut it off." $SCR_1$ at 206-207. When asked, "is this video still in the system somewhere," his answer was "No, sir." $SCR_1$ at 207.

      b.      During cross-examination, defense counsel reiterated this point:

Q: This video camera that was on in 2015, in August, the 19th, 2015?

A: Yes, sir.

Q: Is it running all the time?

A: Yes, sir.

Q: So, that we are not seeing the act, finding of the cell phone by your choice?

A: Not by my choice, to prove possession of contraband in a Correctional facility, I have to show he is in possession of the cell phone.

Q: Okay. That film did or does exist though, does it not, of the actual finding of that cell phone by Deputy or Corporal Larocca, correct?

A: The report states he found it. The video don't.

Q: This video doesn't, clearly?

A: Correct.

Q: What I am saying is, was there a video of him finding it?

A: No, sir. I cut it off.

Q: You cut your cell phone off?

A: Correct.

*Q: Okay, but there was a video of him, this camera is running 24/7, right?*

*A: I understand what you're saying. Yes, sir. Yes, sir.*

*Q: So, there was a video of --*

*A: There would have to be. Yes, sir.*

*Q: -- of Corporal Larocca finding the cell phone?*

*A: Yes, sir.*

*Q: Does it exist today?*

*A: No, sir.*

*Q: So, it is gone?*

*A: Yes, sir.*

Q: And it is gone because you chose not to film it with your cell phone and download it to your computer?

A: No. Actually, I didn't choose not to, that's just where I stopped it. It wasn't choice, I thought it was over. That's where I stopped it.

Q: And it didn't seem important to you to film or to copy the part of the

>   film where Corporal Larocca finds the cell phone?
>
> A: I am not going to say it wasn't important, that's where I stopped it. That's all I can say. That's where I stopped it at.

SCR₁ at 208-210 (emphasis supplied).

During closing arguments, the prosecutor stated: "I wish Warden Miller wouldn't have cut off the recording..." SCR₁ at 237, lines 24-25.

The respondent submits that there is no good cause to order the production of something that does not exist.

5. The petitioner alleges that "Deputy Larocca admitted at trial that the phone was for Demarquez Harris but [that] has been deleted from the transcript" by the court reporter. Upon this basis, the petitioner asks the Court to order the production of the court reporter's backup audio of the proceedings. A review of the transcript, however, shows that this is not the case. Deputy Larocca acknowledged having a conversation with defense counsel prior to the trial, and answered questions about that conversation as follows:

> Q: We turned the lights out in that little [attorney-client meeting] room [in the jail], we looked at the video?
> A: Yes.
> Q: I said that's you?
> A: Yes.
> Q: That's James?
> A: Yes.
> Q: I said who is that other fellow?
> A: Demarquez Harris.
> Q: *You told me, did you not, that Demarquez Harris could have just as easily had that cell phone?*
> A: But as you looked at it you can tell that he just pushes the blanket over.

SCR₁ at 219-220 (emphasis supplied).

In other words, the transcript shows that (1) defense counsel asked Deputy Larocca if he said that Demarquez Harris could have just as easily possessed the cell phone, (2) Deputy Larocca was given an opportunity to deny having made that statement, and (3) Deputy Larocca did not deny having made that statement. The only rational inference from this testimony is that Deputy Larocca did tell defense counsel, in a conversation prior to trial, that Demarquez Harris could have just as easily had that cell phone. That is, the transcript reflects that Deputy Larocca said what the petitioner says he said.

Because the transcript reflects that Deputy Larocca said what the petitioner alleges that he said, there is no good cause to order the production of the court reporter's backup audio tapes.

## CONCLUSION AND PRAYER

The petitioner's *Motion for Production of Documents* should be denied because: (1) the petitioner's claims are procedurally defaulted and that default exists independently of the requested documents, and (2) the requested video does not exist, and (3) the premise for requesting the audio is contradicted by the trial transcript.

Respectfully Submitted,

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney
701 N. Columbia Street
Covington, Louisiana 70433
Tel: (985) 809-8398
Email: mcaplan@22da.com

CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing pleading by sending it via USPS first-class mail, addressed as follows:

> James Jerrod Spikes, Jr., DOC # 461129
> Tangipahoa Parish Jail
> P.O. Box 250
> Amite, LA 70422
> *Petitioner, pro se*

This the 30th day of April, 2020, at Covington, Louisiana.

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney