UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES JERROD SPIKES, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-316** |
| **HEATH MARTIN, WARDEN** | **SECTION: "H"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

## Procedural History

Petitioner, James Jerrod Spikes, Jr., is a convicted inmate currently incarcerated at the Tangipahoa Parish Jail in Amite, Louisiana. In 2015, Spikes was charged with one count of possession or introduction of contraband (cell phone) into a state correctional institution.[1] The following facts were adduced at trial, as set forth by the appellate court on direct appeal:

> On August 19, 2015, the defendant was an inmate housed at the Washington Parish Jail. On that date, corrections officers conducted a cell block "shake down," wherein the cells were searched for contraband. During the searches,

---

[1] State Rec., Vol. 1 of 2, Bill of Information.

the inmates sat around tables in the day room. The defendant was sitting on one side of a table and another inmate was sitting across from him but with his back to the table. The other inmate leaned back and pushed a blanket over the surface of the table toward the defendant. The defendant then reached into his pocket, withdrew a cell phone, and placed it under the blanket. A corrections officer observed these actions and retrieved the cell phone. The incident was captured by a surveillance camera. The State then filed the instant charge against the defendant.[2]

In June 2016, a jury found him guilty as charged.[3] His post-verdict motions were denied, and he was sentenced to four years at hard labor.[4] The State filed a multiple bill of information charging him as a third-felony offender.[5] On January 4, 2017, he was adjudicated as a third-felony offender and sentenced to eight years at hard labor without benefit of probation or suspension of sentence.[6]

On direct appeal, Spikes raised two alleged errors associated with his habitual-offender sentence. In his counseled assignment of error, Spikes asserted that his eight-year sentence was unconstitutionally excessive. By pro se assignment, Spikes argued that one of his predicate convictions was erroneously used to adjudicate him a third-felony offender. On September 15, 2017, the Louisiana First Circuit Court of Appeal affirmed his

---

[2] *State v. Spikes*, 2017-KA-0087 (La. App. 1 Cir. 9/15/17), 228 So.3d 201, 204.

[3] State Rec., Vol. 1 of 2, Trial Minute Entry, 6/21/2016.

[4] State Rec., Vol. 1 of 2, Sentencing Minute Entry, 7/11/2016; *see also*, State Rec., Vol. 1 of 2, R.p. 254, Transcript of Sentencing.

[5] State Rec., Vol. 1 of 2, Multiple Offender Bill of Information.

[6] State Rec., Vol. 1 of 2, Multiple Offender Sentencing Minute Entry, 1/4/2017; *see also* State Rec., Vol. 1 of 2, R.p. 326, Written Reasons on Multiple Offender Sentencing.

conviction and sentence.[7]   Spikes did not pursue relief in the Louisiana Supreme Court.

On or about October 2, 2017, Spikes submitted an application for post-conviction relief to the state district court.[8]   In that application, he raised four claims: (1) the amended version of Louisiana Revised Statute 15:529.1, Acts 2017, No. 282, should have been applied retroactively when sentencing him as an habitual offender; (2) trial counsel was ineffective because he should have subpoenaed Demarquez Harris and the confidential informant mentioned in the incident report, and he failed to exclude from evidence the tainted video recording; (3) the trial was rendered unfair due to prosecutorial misconduct in connection with the video footage; and (4) his conviction was based upon improper tainted evidence.   On April 11, 2018, the state district court issued written reasons denying Spikes' application for post-conviction relief.[9]   He subsequently filed a related supervisory writ application with the Louisiana First Circuit Court of Appeal.   On December 26, 2018, the court of appeal denied relief because Spikes failed to include the necessary documentation with his application.[10]   He filed a second application for post-conviction

---

[7] *State v. Spikes*, 2017-KA-0087 (La. App. 1 Cir. 9/15/17), 228 So.3d 201; State Rec., Vol. 2 of 2.   While the appeal was pending, in July 2017, the Louisiana First Circuit denied Spikes' supervisory writ application seeking post-conviction relief since he was pursuing direct appeal at the time and his request for mandamus relief in conjunction with a motion for production of documents, which were already made part of the appellate record.   State Rec., Vol. 1 of 2, R.p. 360, *State v. Spikes*, 2017-KW-0520 (La. App. 1 Cir. 7/7/17).

[8] State Rec., Vol. 1 of 2, R.p. 374, Uniform Application for Post-Conviction Relief and Memorandum in Support.

[9] State Rec., Vol. 1 of 2, State District Court Reasons for Denying Application for Post-Conviction Relief, R.p. 402, 4/11/18.

[10] State Rec., Vol. 2 of 2, *State v. Spikes*, 2018-KW-1494 (La. App. 1 Cir. 12/26/18),

relief within the time allowed by the court of appeal. On April 29, 2019, the court of appeal denied relief on the merits.[11] As Spikes concedes, he did not pursue relief in the Louisiana Supreme Court.[12] Although not included in the state-court record, it appears Spikes filed a third supervisory writ application with the Louisiana First Circuit related to his habitual-offender adjudication. Because that supervisory writ application did not contain the proper documentation, it was denied by the court of appeal on the showing made.[13]

On or about January 22, 2020, Spikes submitted the instant federal application for habeas corpus relief.[14] In that application, he asserted the following grounds for federal relief: (1) the state courts failed to apply retroactively an amended version of the habitual offender law; (2) his conviction rests upon tainted evidence that was tampered with by prison officials; (3) trial counsel was ineffective for failing to subpoena Demarquez Harris to testify as a witness for the defense; (4) the State failed to provide the name of the confidential informant to the defense; and (5) he was denied fair appellate review due to the court

---

2018 WL 6819339.

[11] State Rec., Vol. 2 of 2, *State v. Spikes*, 2019-KW-0203, 2019 WL 1900402 (La. App. 1 Cir. 4/29/19).

[12] See Rec. Doc. 1, Petition, p. 6 [Question 11(d)], p. 13 [Question 13(a)]; A member of the undersigned's staff confirmed through the Louisiana Supreme Court Clerk of Court's Office that Spikes has not filed any writ applications related to this state criminal conviction with the Louisiana Supreme Court.

[13] *State v. Spikes*, 2019-KW-1559, 2020 WL 1034211 (La. App. 1 Cir. 3/03/2020).

[14] Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

4

reporter's acts of malfeasance in falsifying documents.[15]  The State concedes that the federal petition is timely.  However, the State contends that the claims have not been fully exhausted in the state courts and should be dismissed as procedurally defaulted.  Alternatively, the State argues that Spikes is not entitled to relief on the merits.[16]  Spikes filed a reply to the State's response.[17]

Spikes also filed two separate motions related to his claims.  His first motion relates to his claims involving tainted evidence and malfeasance.  In that motion, he requests "the original surveillance video" and the audio recording of the trial proceedings maintained by the court reporter.[18]  He claims that Warden Jim Miller deleted the surveillance video in order to cover for Deputy Larocca's purported malfeasance.[19]  The State opposed the discovery motion because Spikes has not shown that good cause exists for ordering

---

[15] Rec. Doc. 1, Petition, and Rec. Doc. 1-1, Summary of Case and Brief in Support of Writ.  The State liberally construes Spikes' petition as setting forth these five claims for relief.  Rec. Doc. 14, pp. 4-5.

[16] Rec. Doc. 14.

[17] Rec. Doc. 17.

[18] Rec. Doc. 8, Motion for Production of Documents Video and Audio Tapes.

[19] At trial, Warden Miller explained that he used his cell phone to record part of the video footage captured on the prison surveillance video, because at the time, the video system in the prison was outdated and "you really couldn't burn a disc straight from the DVR that the cameras went to."  He recorded the footage on his cell phone and then transferred the file from his phone to a disc.  The footage showed Spikes place the phone under the blanket.  The warden was cross-examined at length regarding why he did not record the deputy retrieving the cell phone and he testified that it was just where he cut it off.  State Rec., Vol. 2 of 2, Trial Transcript, R.pp. 597-99; Tr.pp. 132-34.  The recorded prison video surveillance no longer exists.

discovery.[20]   The second motion, entitled "Motion to Invoke Act 282," relates to his claim involving the multiple-offender sentence and requests retroactive application of the amended version of Louisiana's habitual-offender law.[21]   The State opposed the motion because based on the date his conviction became final, Spikes was not entitled to the benefit of retroactive application of Acts 2017, No. 282, and the issue is not properly before the Court on federal habeas review.[22]

## Exhaustion and Procedural Default

The State correctly asserts that none of Spikes' claims have been exhausted because the claims were never presented to the Louisiana Supreme Court.   To the extent he now alleges that malfeasance by a court reporter denied him fair appellate review (Rec. Doc. 1-1, p. 1), the claim was not presented in that context to any state court.[23]

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion

---

[20] Rec. Doc. 15.

[21] Rec. Doc. 12, Motion to Invoke Act 282.

[22] Rec. Doc. 16.

[23] To the extent the allegation of a conspiracy between the prosecutor and the court reporter to misrepresent the transcripts was made in the context of his prosecutorial misconduct claim (State Rec., Vol. 2 of 2, Louisiana First Circuit Writ No. 2019-KW-0203, R.p. 743), it still was not presented to the Louisiana Supreme Court.   Regardless of the context in which it was argued, the claim was never presented to the highest state court for review. Spikes also mentions that he raised the claim in a civil rights complaint in the federal district court, *Spikes v. Jenkins*, Civ. Action No. 16-17896 (E.D. La.) (dismissed without prejudice for failure to prosecute); however, this does not satisfy the exhaustion requirement.

of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Nobles v. Johnson*, 127 F.3d 409, 419 (5th Cir. 1997). "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. §2254(b)(1)(A); *Rose*, 455 U.S. at 519-20, 102 S.Ct. 1198).

The exhaustion requirement is only satisfied if the substance of the federal habeas claims have been "fairly presented" to the highest state court. *Id*. (citing *Picard v. Connor*, 404 U.S. 270, 275-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78, 92 S.Ct. 509). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id*. (citing *Nobles*, 127 F.3d at 420). Furthermore, it is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically and properly presented to the Louisiana Supreme

Court, and vice versa.    *See Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).

Spikes has not exhausted his state-court remedies as required by law.    Typically, the Court would recommend that the petition be dismissed without prejudice to allow Spikes to pursue exhaustion of his claims in the appropriate state courts.    However, the State correctly asserts that because state-court review of the claims is no longer available, the federal claims are barred by the doctrine of procedural default.    Even if a habeas claim may be considered "technically" exhausted because a petitioner may no longer litigate the claim in state court, the habeas claim may nonetheless be subject to procedural default.    *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).    "Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred."    *Bledsue v. Johnson*, 188 F.3d 250, 254–55 (5th Cir. 1999) (citing *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. 2546) (footnote omitted).    Under either scenario, a petitioner is considered to have forfeited his federal habeas claims.    *Id*.    As the record in this case reflects, Spikes is no longer able to bring his unexhausted claims in the Louisiana Supreme Court.    He is procedurally barred from doing so under state law because his time for seeking review in that court has run.    Additionally, any attempt to litigate his claims now likely would be dismissed as repetitive under Louisiana Code of Criminal Procedure

article 930.4, or as time-barred by the provisions of Louisiana Code of Criminal Procedure article 930.8.[24] When state-court remedies are rendered unavailable by the petitioner's own procedural default, federal courts are normally barred from reviewing those claims. *See Coleman*, 501 U.S. at 732.

A federal habeas petitioner may be afforded federal review of a procedurally defaulted claim only if he demonstrates cause for his default and resultant prejudice, or that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 731–32); *Amos v. Scott*, 61 F.3d 333, 338–39 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989) and *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). Spikes has not shown cause for his failure to pursue the defaulted claims in the Louisiana Supreme Court.[25] His own ignorance of procedural rules for filing does not

---

[24] *See State v. Spikes*, 2019-KW-1559, 2020 WL 1034211 (La. App. 1 Cir. 3/3/2020) (Theriot, J., concurs) (conviction became final under Louisiana Code of Criminal Procedure article 922 fourteen days after the September 15, 2017 ruling on direct appeal). Under Louisiana law, applications for post-conviction relief must be filed within two years of the date the judgment of conviction and sentence has become final under the provisions of Article 914 or 922." La. C.Cr.P. art. 930.8.

[25] In his reply, Spikes mentions the date of the state district court ruling denying post-conviction relief as July 31, 2019, which he claims hindered him from pursuing further relief. Rec. Doc. 17, pp. 3, 5; *see also* Rec. Doc. 1-1, p. 2. Contrary to his assertion, the district court's reasons for denying the post-conviction relief application in Case No. 15-CR4-128964 were signed and dated April 11, 2018, and timely mailed to him. *See* State Rec., Vol. 1 of 2, R.pp. 402 and 406 (notations at bottom reflect dates certified copies were mailed). Spikes' reference to the date stamped on the "true copy of original" later provided to him by the deputy clerk of court is irrelevant and did not prevent him from filing an application with the Louisiana Supreme Court following the Louisiana First Circuit's ruling on the merits. Additionally, Spikes suggests that perhaps the wrong case number on documents filed during post-conviction proceedings in the state district court hindered him. Rec. Doc. 17,

suffice as cause.   *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).   This Court's review of the record does not support a finding that any factor external to the defense prevented him from raising the claims in a procedurally proper manner or that any action or inaction on the part of the State prevented him from doing so.   "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."   *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v Isaac*, 456 U.S. at 134 n. 43).

Furthermore, Spikes has not shown that a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed.   *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019).   To establish a fundamental miscarriage of justice, Spikes must make a "colorable showing of factual innocence."   *Murray v. Quarterman*, 243 F. Appx. 51, 55 (5th Cir. 2007).   In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.   Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."   *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).   "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."   *Bousley v. United States*, 523 U.S.

---

p. 7.   As the Respondent admits (Rec. Doc. 14, p. 7, n. *), the state-court record reflects an erroneous number (16-CR6-129868) on the State's response to the PCR application and on Spikes' objection (*see* State Rec., Vol. 2 of 2, R.pp. 760, 767).   It appears Spikes was notified by the district court about the incorrect case number at some point.   State Rec. Vol. 1 of 2, R.p. 428.   However, he does not explain why or how this short-lived confusion in case number references could possibly have prevented him from filing a supervisory writ application raising his claims before the Louisiana Supreme Court.

614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).

Broadly and liberally construing his allegations with regard to actual innocence, Spikes points to an uncalled witness, fellow inmate Demarquez Harris, who allegedly would have testified that the phone was not found on Spikes' side of the table.[26] He also argues that the now-deleted surveillance video with footage of Deputy Larocca finding the cell phone would have confirmed this and shown the deputy altering information on the phone. Based on this purported evidence, Spikes speculates that no reasonable juror could have found him guilty of possessing contraband. However, Spikes offered no support for his self-serving allegations. He failed to submit an affidavit for Demarquez Harris. And the record shows that the original surveillance video with the additional footage no longer exists. Furthermore, the preserved video footage was played for the jury at trial, and as Warden Miller testified, depicted Spikes with the cell phone placing it under the blanket that Harris had pushed toward him on the table in the day room.[27] Deputy Larocca personally observed Spikes reach into his pocket, retrieve the cell phone, and place it under the blanket where Larocca subsequently found it.[28] Even if Spikes' purported new evidence could be considered, the evidence does not contradict the portion of the video that showed Spikes, not Harris, reach into his pocket, withdraw a cell phone, and place it under the blanket. The

---

[26] *See* Rec. Doc. 1, Petition p. 9 (factual allegations supporting Ground Three).

[27] State Rec., Vol. 2 of 2, R.p. 597, Trial Transcript, p. 132.

[28] *Id.* at R.pp. 605-09, Tr. pp. 140-44.

video establishes that Spikes was in possession of the cell phone even if another theoretical possibility was presented to the jury of the phone belonging to Demarquez Harris. Spikes has not made a colorful showing of actual innocence to avoid the procedural bar.

Accordingly, for the reasons expressed, Spikes has failed to overcome the procedural bar to afford review of the claims. The claims raised herein are procedurally defaulted and therefore not subject to federal habeas review.

## Pending Motions

As previously set forth, also pending before the undersigned are two opposed motions filed by Spikes seeking a ruling on the applicability of an amended version of the habitual-offender law to his multiple-offender sentence and the discovery of surveillance video and audio recordings relative to the merits of the claims raised in his federal application. As addressed fully herein, Spikes is not entitled to a review of his federal claims on the merits because his claims are procedurally defaulted. Hence, he has not shown good cause to warrant discovery in this matter. *See* Rule 6(a)—Section 2254 Cases; *Reed v. Quarterman*, 504 F.3d 465, 471-72 (5th Cir. 2007) (citing *Harris v. Nelson*, 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) (good cause may exist "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief."). The Court also need not address his contentions involving the merits of his claim that Act 282 applies in this case when that claim itself is procedurally defaulted and not properly before the Court on federal review. He is not entitled to a circuitous review

of that issue through his motion to invoke.

Accordingly, **IT IS ORDERED** that Spikes' Motion for Discovery (Rec. Doc. 8) and Motion to Invoke Act 282 (Rec. Doc. 12) are both **DENIED**.

### RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Spikes' application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[29]

New Orleans, Louisiana, this  5th  day of  August , 2020

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[29] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.